# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS LUTGE, an individual; and BROOKE CANTWELL, an individual,<br><br>Defendants. | Case No.: 1:20-cv-01809 DAD JLT<br><br>ORDER VACATING THE HEARING DATE OF MAY 28, 2021<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 18) |

National Union Fire Insurance Company of Pittsburgh, PA, asserts Dennis Lutge and Brooke Cantwell made unauthorized purchases using funds from their employer, Tehachapi Public Cemetery District. In addition, Plaintiff contends Cantwell was paid for hours she did not work and received insurance benefits to which she was not entitled. Plaintiff, which issued an insurance policy to the District, seeks to hold the defendants liable for fraud, conversion, breach of fiduciary duty, civil conspiracy, and unjust enrichment. (Doc. 1). Because Cantwell failed to respond to the allegations in the complaint, Plaintiff now seeks the entry of default judgment against Cantwell. (Doc. 18).

The Court finds the matter is suitable for decision without oral argument, and the matter is taken under submission pursuant to Local Rule 23(g) and General Order 618. Therefore, the hearing date of May 28, 2021 is vacated. For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED**.

1

## I. Background and Procedural History

Plaintiff asserts Dennis Lutge and Brooke Cantwell misappropriated $263,888.000 from Tehachapi Public Cemetery District between 2013 and December 31, 2017. (Doc. 1 at 3, ¶¶ 10, 18). Plaintiff reports that "Lutge and Cantwell were criminally charged with theft and other crimes due to their schemes." (*Id.* at ¶ 17). Specifically, Cantwell was charged with misappropriation of public funds, grand theft, and embezzlement.[1] Cantwell entered plea of *nolo contendere* to the embezzlement charge on April 22, 2021, and the remaining charges were dismissed.

Plaintiff initiated this action by filing a complaint on December 20, 2020. (Doc. 1). Although Cantwell was properly served with the summons and complaint on December 23, 2020 (Doc 7), she failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. Pursuant to Plaintiff's request, the Clerk of the Court entered default against Cantwell on January 22, 2021. (Docs. 8, 10). On March 16, 2021, the claims against Lutge were dismissed. (Doc. 14). Plaintiff filed the motion for default judgment against Cantwell that is now pending before the Court on April 12, 2021 which is now pending before the Court. (Doc. 18). To date, Cantwell has neither appeared nor opposed the motion.

## II. Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). Therefore, the Court takes judicial notice of the docket and documents issued by the state court in Kern County Superior Court Case No. BF181036B.

(citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. California. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord. Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III. Plaintiff's Factual Allegations

The Court accepts Plaintiff's factual assertions because default has been entered against Defendants. *See Pope*, 323 U.S. at 22. With the motion now pending, Plaintiff has also presented evidence, including in declaratory form and exhibits, which support allegations in the complaint.

Plaintiff alleges that Cantwell was a part-time employee of Tehachapi Public Cemetery District ("Tehachapi") until January 8, 2018. (Doc. 1 at 2, ¶ 8). Plaintiff contends that between 2013 and 2017, "Lutge and Cantwell engaged in a scheme whereby they used Tehachapi funds to make unauthorized personal purchases at retailers like Amazon and to pay for gas and phone expenses." (*Id.* at 3, ¶ 10). Plaintiff asserts the defendants "concealed their misappropriation from Tehachapi by coding personal purchases as legitimate business expenses in Tehachapi's accounting system and by maintaining two separate accounting systems for Tehachapi business." (*Id.*, ¶ 15). According to Plaintiff, "Lutge and Cantwell misappropriated $95,476.00 from Tehachapi though their unauthorized personal purchases." (*Id.*, ¶ 11; *see also* Doc. 18-1 at 3, ¶).

In addition, Plaintiff asserts that "Cantwell was not authorized to work more than twenty hours per week and was ineligible to receive insurance benefits through Tehachapi absent approval by the Tehachapi's Board of Trustees." (Doc. 1 at 2, ¶ 9). However, Plaintiff contends Cantwell "engaged in a scheme whereby [she]… was paid wages for hours that she did not work and/or was not authorized to

3

work, and received insurance benefits that she was not authorized to receive as a part-time employee." (*Id.* at 3, ¶ 12). Plaintiff asserts "[t]he unauthorized wages and insurance benefits were provided to Cantwell by Lutge and without the consent of Tehachapi's Board of Trustees as required." (*Id.*, ¶ 13). Plaintiff reports this resulted in a misappropriation of $113,113.00 through unauthorized wages and $33,2999 through unauthorized insurance benefits. (*Id.*, ¶ 14).

Plaintiff asserts that National Union issued insurance policy No. 01-425-57-41, which provided coverage "for losses sustained due to employee dishonesty" to Golden State Risk Management Authority and Tehachapi. (Doc. 1 at 3, ¶ 20). Plaintiff reports that pursuant to the policy, it indemnified "the losses that Tehachapi sustained as a result of the theft by Lutge and Cantwell." (*Id.* at 4, ¶ 21). As a result, Plaintiff "has become subrogated CSAS, Golden State and Tehachapi." (*Id.*, ¶ 22). In addition, Plaintiff was assigned all "rights, claims, and causes of action" against Lutge and Cantwell. (*Id.*, ¶ 23; *see also* Doc. 1-1 at 2). Thus, Plaintiff seeks to hold Cantwell liable for fraud, conversion, breach of the fiduciary duty, civil conspiracy, and unjust enrichment. (*See generally* Doc. 1 at 4-8; *see also* Doc. 18 at 5-8). For these claims, Plaintiff seeks compensatory damages and costs in the amount of $257,913.00.[2] (Doc. 18 at 10)

## IV. Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Id*. Generally, where default has been entered against a defendant, a plaintiff has no other means to recover damages. *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery"). Because Plaintiff has no other means for

---

[2] Plaintiff reports the misappropriated funds by Lutge and Cantwell totaled $263,888.00. (Doc. 1 at 3, ¶ 18). With the motion for default judgment, Plaintiff reports it "received a payment from Lutge in the amount of $6,250." (Doc. 18-1 at 6, ¶ 59). In addition, Plaintiff reports it incurred $275.00 in costs. (Id. at 7, ¶ 60). Thus, the compensatory damages and costs requested total $257,913.00. (Doc. 18 at 10).

recovery, Plaintiff would be prejudiced if default judgment is not granted and this factor weighs in favor of the entry of default judgment.

> **B.    Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Further, a complaint is sufficient when the claims "[cross] the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Notably, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

Plaintiff seeks to hold Cantwell liable for fraud, conversion, breach of fiduciary duty, civil conspiracy, and unjust enrichment. (*See generally* Doc. 1 at 4-8; *see also* Doc. 18 at 5-8). Thus, the Court must determine whether these claims are cognizable. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

> 1.    Fraud

Under California law, the elements for fraud are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citing *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996). The burden to establish fraud is "heavy," *Robi v. Five Platters, Inc*., 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed. R. Civ. P. 9(b).

Plaintiff alleges Cantwell made unauthorized personal purchases with Tehachapi's funds and coded the purchases as authorized business expenses in the accounting system, and "maintained two separate accounting systems for Tehachapi business. (*See* Doc. 1 at 3-4, ¶¶ 15, 25). Thus, Cantwell

falsely represented the legitimacy of the purchases, and her improper coding of the purchases demonstrates an intent to mislead her employer. (*Id.*). Plaintiff also contends that Cantwell did not disclose the fact that she "was paid for hours that she did not work and/or was not authorized to work, and received insurance benefits that she was not authorized to receive." (*Id.* at 3, ¶ 12). According to Plaintiff, "Tehachapi did justifiably rely upon the misrepresentations of Lutge and Cantwell when it permitted Lutge and Cantwell to remain employed and continue to carry out their schemes." (*Id.* at 4, ¶ 28). Plaintiff alleges damages in the amount of $95,476.00 for unauthorized personal purchases; $135,113.00 for Cantwell's unauthorized wages; and $33,299.00 for her unauthorized insurance benefits. (*Id.* at 3, ¶¶11-14). Thus, Plaintiff alleges damages in the total amount of $263,888.00 due to Tehachapi's reliance on the fraudulent actions. (*See* Doc. 18 at 5, ¶ 38; Doc. 18-1 at 4, Leibowitz Decl. ¶ 24). Therefore, the Court finds Plaintiff sufficiently pled a fraud claim against Cantwell.

### 2. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right, and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Money can only be "the subject of a cause of action for conversion [if] there is a specific, identifiable sum involved . . ." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 234 (Ct. App. 2006) (citing *Fischer v. Machado*, 58 Cal. Rptr. 2d 213, 215 (Ct. App. 1996)).

Plaintiff alleges Tehachapi rightfully possessed and owned $263,888.00, and Cantwell intentionally misappropriated these funds from her former employer, which assigned its claims to Plaintiff. (Doc. 1 at 4-5, ¶¶ 21-23, 35). As detailed above, this total includes $95,476.00 through unauthorized personal purchases; $135,113.00 for unauthorized wages; and $33,299.00 for insurance benefits that were not authorized for Cantwell. (*Id.* at 3, ¶¶11-14). Despite Plaintiff's demands, Cantwell failed to return the converted funds. (*Id.* at 5 ¶ 34). Because Plaintiff alleges a specific, identified amount of misappropriated funds totaling $263,888.00, the Court finds Plaintiff states a cognizable claim for conversion against Cantwell.

### 3. Breach of Fiduciary Duty

Breach of fiduciary duty has three elements under California Law: "the existence of a fiduciary

relationship, breach of fiduciary duty, and damages." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citing *Shopoff & Cavallo LLP v. Hyon*, Cal. Rptr. 3d 268, 285 (Ct. App. 2008)). A fiduciary relationship is where "one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Wolf v. Superior Court*, Cal. Rptr. 2d 860, 864 (Ct. App. 2003). Plaintiff asserts that "[a]s Tehachapi's employee with access to its financial information and accounting system, Cantwell owed a fiduciary duty to Tehachapi to act in Tehachapi's best interests and to refrain from stealing from Tehachapi." (Doc. 1 at 6, ¶ 39).

Significantly, it is not clear Cantwell's position "as a part-time secretary" created a fiduciary relationship with Tehachapi. (*See* Doc. 1 at 2, ¶ 8). In general, "an employer-employee relationship alone is insufficient to create a fiduciary relationship." *Ryan v. Microsoft Corp.*, 2015 WL 1738352, at *14 (N.D. Cal. Apr. 10, 2015) (citing *Salsgiver v. Am. Online, Inc.*, 32 F. App'x 894 (9th Cir. 2002); *see also O'Dell v. Freightliner Corp.,* 10 Cal.App. 4th 645, 659 (Ct.App. 1992)) ("there is generally no fiduciary relationship between employee and employer"); *Amid v. Hawthorne Comm. Medical Grp., Inc.,* 212 Cal.App.3d 1383, 1391 (Ct.App. 1989) ("[a] bare employee-employer relationship does not create a confidential relationship"). Thus, the Court finds the facts alleged fail to support a conclusion that Cantwell was in a position that created a fiduciary duty to her employer.

### 4. Civil Conspiracy

Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994). To state a claim for a civil conspiracy, a plaintiff must allege: "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Industry v. Fillmore*, 198 Cal.App.4th 191, 211-12 (2011). Conspiring defendants must "have actual knowledge that a tort is planned," must "concur in the tortious scheme with knowledge of its unlawful purpose," and must have intended to aid in the scheme's "unlawful objective." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (Cal.App. 2 Dist.,1995).

Plaintiff alleges that Cantwell and Lutge "agreed to defraud Tehachapi by making unauthorized

personal purchases with Tehachapi's funds and by providing Cantwell with wages and insurance benefits that she did not earn and that she was not authorized to receive." (Doc. 1 at 7, ¶ 44). In addition, Plaintiff asserts the defendants "agreed to conceal their fraud by coding personal purchases as legitimate business expenses in Tehachapi's accounting system and by maintaining two separate accounting systems for Tehachapi business." (*Id.*, ¶ 45). Thus, Plaintiff alleges facts that support a conclusion that Cantwell had a plan with Lutge to commit tortious acts and took actions to misappropriate funds for personal use. Plaintiff has also sufficiently established damages for the actions taken by Cantwell. Therefore, the Court finds Plaintiff sufficiently pled a civil conspiracy claim.

### 5. Unjust Enrichment/Restitution

Plaintiff seeks to hold Cantwell liable for "unjust enrichment/restitution." (Doc. 1 at 7-8). Previously, courts have observed that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Golden Gate Nut Co. v. CIB Int'l Trading, Inc.*, 2014 WL 3851534, at *3 (E.D. Cal. Aug. 5, 2014) ("[u]nder California law, unjust enrichment is a remedy, not an independent cause of action"); *Robinson v. HSBC BANK USA,* 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (finding "no cause of action for 'unjust enrichment'" under California law); *Levine v. Blue Shield of California*, 117 Cal. Rptr. 3d 262, 278 (Ct. App. 2010) ("there is no cause of unjust enrichment action in California for unjust enrichment"). Thus, to the extent Plaintiff seeks to state a claim for unjust enrichment, the fifth claim fails as a matter of law.

On the other hand, "California does recognize a claim for restitution." *Walters v. Fidelity Mortg. of California*, 2010 WL 1493132, at *12 (E.D. Cal. April 14, 2010) (citing *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006)). "Under the law of restitution, [a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) (citation, internal quotation marks omitted). Thus, the Ninth Circuit determined that "[w]hen a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana,* 783 F.3d at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)). Plaintiff alleged Cantwell benefited in the amount of $263,888.00 through the misappropriation of

funds from her employer. (Doc. 1 at 7, ¶ 50; *see also* Doc. 18-1 at 6, Leibowitz Decl. ¶ 53). Therefore, the Court finds the facts alleged support a claim for restitution against Cantwell.

### 6. Conclusion

Plaintiff has alleged facts sufficient to support its claims for fraud, conversion, civil conspiracy, and restitution. Therefore, the Court finds the merits of Plaintiff's claims and the sufficiency of the complaint together support the entry of default judgment.

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176; *see also Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) ("whether [damages] sought is proportional to the harm caused by defendant's conduct"). Courts disfavor then entry of default judgment "when a large sum of money is involved." *Moore v. Cisneros*, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 12, 2012).

Plaintiff seeks judgment in the total amount of $257,913.00, including compensatory damages and costs. (*See* Doc. 18 at 10). Given the amount of money at stake, this factor could weigh against the entry of default judgment. *See Moore*, 2012 WL 6523017, at *4. However, the amount identified is directly proportional to the wrongful conduct of Cantwell, and the amount misappropriated from her former employer. Thus, the Court finds this factor does not weigh against default judgment.

### D. Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in the Complaint as true and (2) though properly served, Cantwell failed to appear to contest the material facts in the complaint. *See PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's failure to answer is due to excusable

neglect. *See Eitel*, 782 F.2d at 1472; *see also PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Here, Cantwell was properly served with the summons and complaint and the motion for default judgment. (Doc. 7; Doc. 18-2). Thus, the record indicates that Cantwell is aware of the suit, and it is unlikely the failure to respond was the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"); *see also State Farm Life Ins. Co. v. Canul*, 2012 U.S. Dist. LEXIS 50313, at *7 (E.D. Cal. April 10, 2012) (finding that the defendant's failure to answer, and the resulting defaults entered by the Clerk of the Court, is unlikely the result of excusable neglect). Consequently, this factor weighs in favor of the entry of default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Cantwell's failure to appear before the Court and defend in this action makes a decision on the merits impractical.

## V. Relief Requested

Based upon the foregoing, the *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court turns to the relief requested by Plaintiff and the evidence presented related to the damages. *See Pope*, 323 U.S. at 22 (allegations regarding the amount of damages must be proven).

### A. Damages

Plaintiff requests "a total judgment amount of $257,913.00," which includes compensatory damages in the amount of $257,363.00 and $275.00 in costs. (*See* Doc. 18 at 10; Doc. 18-1 at 6-7, Leibowitz Decl. ¶¶ 59-60). Compensatory damages awarded should place Plaintiff in the position it would have occupied had the misrepresentations not occurred. *See, e.g., Eckert Cold Storage v. Behl.*, 943 F. Supp. 1230, 1234 (E.D. Cal. 1996). As set forth above, the Court finds Plaintiff has established damages in the amount of $263,888.00 related to the claims for fraud, civil conspiracy, and conversion. However, Plaintiff reports National Union has received payment in the amount of $6,250.00 from

Lutge. (Doc. 18 at 10). Thus, the Court finds Plaintiff is entitled to the remedy of restitution for these claims and recommends the request for damages in the amount of $257,363.00 be granted.

**B.     Costs**

In addition to damages, Plaintiff seeks reimbursement of litigation costs in the amount of $275.00 pursuant to Rule 54 of the Federal Rules of Civil Procedure. (Doc. 18 at 2, 10). Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Rule 54, which provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006).

Plaintiff has not specifically identified its costs related to this action. (*See* Doc. 18-1 at 6-7, ¶¶ 58, 60). Nevertheless, the Court's docket indicates Plaintiff paid the filing fee of $402, which is compensable under 28 U.S.C. § 1920. Accordingly, the Court finds Plaintiff has sufficiently established costs exceeding the amount requested and recommends the request for costs in the amount of $275.00 be granted.

## VI. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the Court's discretion. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's motion for default judgment (Doc. 18) be **GRANTED**;
2. Plaintiff's request for damages in the amount of $263,888.00 be **GRANTED**; and
3. Plaintiff's request for costs be **GRANTED** in the amount of $275.00.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 24, 2021**                    **/s/ Jennifer L. Thurston**
                                              CHIEF UNITED STATES MAGISTRATE JUDGE

12